UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. 4:16CR00300 RLW (SPM) | |
| | ) | |
| MARK A. BECKHAM, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE AND STATEMENTS OBTAINED
FROM DEFENDANT AFTER JULY 23, 2012**

COMES NOW, the United States of America, by and through Richard G. Callahan,

United States Attorney for the Eastern District of Missouri, and Steven A. Muchnick, Assistant

United States Attorney for said District, and for the Government's Response to Defendant's

Motion to Suppress Physical Evidence and Statements Obtained from Defendant After July 23,

2012, [Doc. #36], states as follows:

I.   **INTRODUCTION**

Defendant Mark A. Beckham is attempting to suppress all physical evidence and

statements obtained from him after July 23, 2012 on the ground that such evidence was acquired

by means of "deceit, trickery or misrepresentation." According to defendant, the government

failed to advise him that it had "firm indications of fraud" at the same time that it was continuing

to investigate him under the guise of conducting a civil audit.

The sole basis for defendant's contention that the government had "firm indications of

fraud" on or about July 23, 2012 is the fact that the Revenue Agent who was investigating the tax

returns which are the subject of the indictment in this case met with an Internal Revenue Service

1

(IRS) "fraud technical advisor" on July 24, 2012. However, as will be shown below, and at the evidentiary hearing on this motion, the mere fact that an IRS civil agent meets with a "fraud technical advisor" does not automatically convert a routine civil tax audit into a formal criminal investigation.

**II.     DEFENDANT'S ASSERTION THAT IRS REVENUE AGENT JOHN SHAKE WAS WORKING FOR THE IRS SPECIAL ENFORCEMENT PROGRAM WHILE HE WAS CONDUCTING A CIVIL AUDIT OF THE TAX RETURNS WHICH ARE DESCRIBED IN THE INDICTMENT IS FALSE**

Defendant was charged in a four count indictment with one count of violating 26 U.S.C. § 7212(a), corruptly interfering with the administration of the internal revenue laws (Count 1), and three counts of violating 26 U.S.C. § 7206(2), aiding or assisting in the preparation of a false tax return (Counts 2, 3, and 4). The indictment refers to three federal income tax returns that defendant was alleged to have prepared. Two of these returns were U.S. Individual Income Tax Returns, Form 1040, which defendant prepared for individuals JH and SMH for the calendar years 2009 and 2010. These returns are the subjects of Counts 2 and 3, respectively, and are also referred to in Count 1. The remaining return was a U.S. Corporation Income Tax Return, Form 1120S, which defendant prepared for JM Horseman Group, LLC. This return is the subject of Count 4, and is also referred to in Count 1.

Defendant notes that the audit of these returns began sometime around November 2011, and was primarily conducted by IRS Revenue Agent John Shake. However, in describing Agent Shake, defendant made a fundamental misrepresentation of fact which needs to be corrected. Defendant said that Agent Shake was employed in the IRS's Special Enforcement Program (SEP), which defendant described as a program which investigates fraudulent activity undertaken by both legal and illegal entities.

However, at the time of the audit of the income tax returns which are described in the indictment, Agent Shake was not employed in SEP. The government will show at the hearing in this matter that Agent Shake did not go to work for SEP until November 30, 2014, which was more than one and one half years after Agent Shake decided to make a fraud referral. This court should reject any insinuation by defendant that Agent Shake was conducting a secretive criminal investigation prior to the time of his fraud referral because he was employed in the SEP program since Agent Shake did not go to work for SEP until November 30, 2014.

**III.      IN ORDER TO SUPPRESS EVIDENCE ON THE GROUND THAT THE IRS MISLED A DEFENDANT TO BELIEVE THAT A CIVIL AUDIT WAS NOT A CRIMINAL INVESTIGATION, THE DEFENDANT MUST SHOW THT THE IRS HAD FIRM INDICATIONS OF FRAUD BY THE DEFENDANT, THERE IS CLEAR AND CONVINCING EVIDENCE THAT THE IRS AFFIRMATIVELY AND INTENTIONALLY MISLED THE DEFENDANT, AND THE IRS'S CONDUCT RESULTED IN PREJUDICE TO THE DEFENDANT'S CONSTITUTIONAL RIGHTS**

Defendant's motion to suppress is based on *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977). In *Tweel*, an IRS agent failed to advise the defendant that a civil audit of the defendant's tax returns was being undertaken at the request of the Organized Crime and Racketeering Section of the Department of Justice. The defendant's accountant had asked the IRS agent if a Special Agent was involved, and received a negative response, which was truthful at the time. According to the Fifth Circuit, the defendant's consent to produce evidence to the IRS was obtained by deception, which required the suppression of evidence voluntarily turned over by the defendant to the IRS.

The Fifth Circuit noted that it had previously held that the mere failure of either an IRS Revenue Agent or a Special Agent to warn a taxpayer that an investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, does not constitute fraud, deceit and trickery. *Id.* at 299. The court held that some affirmative

3

misrepresentation was required to establish the existence of fraud, and the moving party must prove that misrepresentation by clear and convincing evidence. *Id.*

In *Tweel*, the Fifth Circuit held that the agent's failure to notify the defendant of the obvious criminal nature of the investigation was fraudulent conduct, which violated the defendant's rights. According to the court, the agent's response as to whether a special agent was involved, albeit true on its face, misled the defendant to such a degree that the court determined that the defendant's consent to provide evidence to the IRS was obtained by deception.

The circumstances which led to the suppression of evidence in *Tweel* are simply not present in this case. There was no involvement by any criminal investigators prior to Agent Shake's decision to refer the matter for criminal investigation on April 5, 2013. In addition, there will be no evidence that defendant ever asked Agent Shake or anyone else from the IRS if the audit was being undertaken to uncover violations of criminal law.

Defendant notes that the Eighth Circuit in *United States v. Grunewald*, 987 F.2d 531 (8th Cir. 1993), adopted the holding of Tweel. However, the evidence which the government anticipates will be elicited on the hearing on defendant's motion to suppress will show that the situation present herein is similar to the factual situation present in *Grunewald*, where the Eighth Circuit refused to suppress evidence on the ground that the defendant's consent to the production of such evidence was obtained by deceptive conduct on the part of the government.

In *Grunewald*, a physician was being investigated by the IRS for not reporting income which he had received as the medical director of a clinic. Throughout the IRS's investigation, the physician told the IRS agent who was investigating the matter that the money which he received from the clinic was deposited into his medical partnership account and was reported by the partnership to the IRS. The agent informally contacted the IRS's Criminal Investigation Division

4

to discuss the case, but after that communication, the agent determined that there were

insufficient indications of fraud to refer the case for criminal prosecution at that time.

However, after the agent requested copies of canceled checks which had been paid by the

clinic to the physician, the physician informed the agent that the money paid by the clinic had not

been treated as partnership income. After the agent received the copies of the canceled checks

from the clinic, the agent determined that there was a substantial deficiency in the income

reported by the physician on his tax returns for three years. The agent believed at that time that

there were firm indications of fraud, and referred the case for criminal investigation.

The Eighth Circuit affirmed the district court's refusal to suppress the evidence obtained

during the investigation. After citing *Tweel* for the proposition that the IRS may not develop a

criminal investigation under the auspices of a civil audit, the Eighth Circuit in *Grunewald* stated

that "once an IRS agent has developed 'firm indications of fraud' in a civil investigation, the

case must be turned over to the CID."[1] *Id.* at 534.

The Eighth Circuit added that the fact that an agent does not tell a taxpayer that

information learned during a civil audit may lead to a criminal investigation is not evidence that

the IRS intended to deceive the taxpayer. The court recognized the problem which could result if

investigations are referred for criminal investigation too soon, as follows:

> If IRS agents, exercising sound discretion and good judgment, fear suppression of
> evidence where no intentional, prejudicial misrepresentation is afoot, civil audits
> will prematurely and unnecessarily be referred to CID.

*Id.* at 534. The Eighth Circuit set forth what a defendant must prove in order to suppress

evidence on the ground that the IRS misled a defendant into believing that an investigation was

not being undertaken to acquire evidence for a criminal prosecution, as follows:

---

[1] The term "CID" refers to the Criminal Investigation Division of the IRS.

> Evidence obtained in the course of a criminal investigation, where the defendant has not been apprised of the nature of the investigation, may be suppressed only if the defendant establishes that: 1) the IRS had firm indications of fraud by the defendant, 2) there is clear and convincing evidence that the IRS affirmatively and intentionally misled the defendant, and 3) the IRS's conduct resulted in prejudice to defendant's constitutional rights.

*Id.* at 534. The Eighth Circuit in *Grunewald* noted that the IRS agent who was conducting the audit had contacted CID to informally discuss the facts of the case. However, this communication was not sufficient to render the investigation criminal in nature because after the agent spoke to CID, he concluded that there were insufficient indications of fraud to refer the case for criminal investigation.

The Eighth Circuit elaborated on its holding in *Grunewald* in *United States v. Wadena*, 152 F.3d 831, 850-52 (8th Cir. 1998), where the defendants contended that an IRS CID Special Agent was aware that a civil IRS audit was occurring at the same time as the criminal investigation. The evidence asserted by the defendants to support their contention that evidence obtained from the civil audit should be suppressed was that the Special Agent asked someone working on the civil audit for a copy of a past tax return of one of the defendants.

After citing *Grunewald* for the proposition that an IRS auditor conducting a civil audit who detects a firm indication of fraud must suspend the audit and refer the case for evaluation by CID, the Eighth Circuit in *Wadena* said that, "[a] firm indication of fraud is different than an initial indication that fraud exists, and it is more than a mere suspicion of fraud." *Id.* at 851.

The evidence which will be presented at the hearing on defendant's motion to suppress will show that Agent Shake did not have a firm indication of fraud until April 5, 2013, when he decided to make a fraud referral for criminal prosecution. This was because Agent Shake learned for the first time on April 3, 2013 that there were irregularities regarding a loan which was the basis for substantial losses claimed on tax returns which were the subject of Counts 1, 2, and 3.

6

Agent Shake terminated his civil audit at that time, and referred the matter for criminal investigation.

Defendant will not be able to prove that the IRS affirmatively and intentionally misled him into believing that the IRS's civil audit of various tax returns which he prepared was, in reality, a criminal investigation. As a result, this court should overrule Defendant's Motion to Suppress Physical Evidence and Statements Obtained from Defendant After July 23, 2012, [Doc. #36].

**IV.     THE MERE FACT THAT AN IRS CIVIL REVENUE AGENT CONSULTS WITH A FRAUD TECHNICAL ADVISOR DOES NOT CONVERT A CIVIL AUDIT INTO A CRIMINAL INVESTIGATION**

The sole basis for defendant's contention that Agent Shake had a firm indication of fraud as of July 23, 2012, is that on July 24, 2012, Agent Shake met with Laurie Brimmer, an IRS Fraud Technical Advisor (FTA). In *United States v. Dilworth*, 2012 WL 1390222, at \*4, fn. 4 (D.N.J. April 20, 2012), the court described the role of an FTA in IRS civil audits, as follows:

> The IRS Fraud Technical Advisor provides assistance to Revenue Agents in cases potentially involving fraud. If a Revenue Agent believes their case may have fraud potential, the Revenue Agent is instructed to call the assigned Fraud Technical Advisor for the region and work with the Fraud Technical Advisor in conducting the civil audit and making the decision whether to refer the case to the criminal division for investigation.

*Id.* at \*4, fn. 4. The court in *Dilworth* said that an FTA was "quite properly involved in the investigation and monitored the referral process to ensure the civil audit was not used as an instrument of criminal prosecution. *Id.* at \*9. In *Dilworth*, the court refused to suppress statements obtained from the defendant after an IRS Revenue Agent consulted with an FTA because the court believed that the Revenue Agent did not have sufficient evidence of criminal fraud to refer the matter for criminal prosecution until after the Revenue Agent followed the FTA's advice and interviewed the defendant. *Id.* at \*9.

In *United States v. Kim*, 2010 WL 3490228 (N.D. Cal. September 3, 2010), the court rejected the defendant's motion to suppress evidence obtained after an IRS Revenue Agent spoke with an FTA. The court in *Kim* noted that the Internal Revenue Manual states that FTAs are available to assist revenue agents to help them "determine if firm indications of fraud/willfulness are present, criminal criteria has been met, etc." *Id.* at *4, n. 6. The court added:

> "Kim [the defendant] has presented no authority for the proposition that a revenue agent who simply contacts a fraud referral specialist (as opposed to a special agent) somehow places a civil audit within the ambit of a criminal investigation.

*Id.* at *4. Defendant also has not provided any authority in support of his contention that the mere fact that a Revenue Agent discusses the facts of an audit with an FTA automatically converts a civil audit into a criminal investigation.

Similarly, in *United States v. Barry*, 2009 WL 603623 (M.D. Fla. March 9, 2009), two IRS Revenue Agents, who were conducting separate investigations of husband and wife taxpayers, consulted with FTAs prior to making criminal referrals and before they had finished acquiring evidence against the defendants. The court noted that an FTA is a "civil employee," and a "civil advisor." *Id.* at *7. In *Barry*, the court denied the defendants' motions to suppress evidence on the ground that the revenue agents terminated their investigations when their investigations revealed sufficient badges of fraud to refer the case for criminal investigation. *Id.* at *11. The fact that the revenue agents met with FTAs while their investigations were still pending was not deemed a basis for determining that the investigations were continued in bad faith.

In *United States v. Hee*, 2015 WL 6510345 (D. Hi. October 27, 2015), and 2015 WL 1931988 ((D. Hi. April 27, 2015), an IRS Revenue Agent who was investigating the defendant met with an FTA who said that there was not sufficient evidence to make a criminal fraud

referral. The investigation continued for an additional eleven months until enough evidence was acquired to make a fraud referral. The district court refused to dismiss the case on the ground that the defendant was secretly conducting a criminal investigation before making the fraud referral. In denying a motion for reconsideration of its initial refusal to dismiss the case, the court in *Hee* said that, "IRS agents are not required to refer a mater on a mere suspicion of fraud," and that "a 'firm indication' of fraud is required before a referral is mandatory." 2015 WL 6510345, at *16.

In *United States v. Greve*, 490 F.3d 566, 568-572 (7th Cir, 2007), an IRS Revenue Agent met with the "IRS District Fraud Coordinator" to determine whether the case involved fraud. According to the Seventh Circuit:

> The Fraud Coordinator helps develop potential fraud cases and instructs revenue agents and tax auditors how to investigate cases that may involve civil fraud or result in a criminal referral to the IRS Criminal Investigation Division ("CID").

*Id.* at 568. The investigation in *Greve* continued for approximately one year after the Revenue Agent's initial meeting with the Fraud Coordinator, at which time a decision was made to refer the case for criminal investigation. The Seventh Circuit affirmed the district court's refusal to suppress evidence obtained after Revenue Agent's initial meeting with the Fraud Coordinator.

The court in *Greve* cited its previous decisions of *United States v. Serlin*, 707 F.2d 953, 956 (7th Cir. 1983), where it held that a defendant seeking suppression must produce clear and convincing evidence that agents affirmatively misled him as to the true nature of their investigation, and *United States v. Kontny*, 238 F.3d 815, 820 (7th Cir. 2001), where it held that "a failure to terminate a civil investigation when the revenue agent has obtained firm indications of fraud does not, without more, establish the inadmissibility of evidence obtained by the agent in continuing the investigation," *Id.* at 820,  and that "proof of deceit must be linked up to the constitutional standard of threat or promise, *Id.* at 819."

9

These cases establish that the mere fact that an IRS Revenue Agent consults with an FTA during the course of a civil audit does not cause the audit to be converted into a criminal investigation.

Defendant will not be able to show that Revenue Agent Shake had a firm indication of fraud until he and FTA Brimmer decided to make a fraud referral on April 5, 2013. In addition, defendant will not be able to prove by clear and convincing evidence that Revenue Agent Shake or any other IRS employee attempted to deceive him during the civil audit of the tax returns which are the subject of the indictment in this case. As a result, this court should overrule Defendant's Motion to Suppress Physical Evidence and Statements Obtained from Defendant After July 23, 2012, [Doc. #36].

## V.    CONCLUSION

Defendant's Motion to Suppress Physical Evidence and Statements Obtained from Defendant After July 23, 2012, [Doc. #36], should be overruled.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/Steven A. Muchnick*
STEVEN A. MUCHNICK – 27597MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

Justin K. Gelfand
Sara G. Neill

*s/ Steven A. Muchnick*
STEVEM A. MUCHNICK – 27597MO
Assistant United States Attorney
